But the reversal did not adjudge directly, nor by implication, that the defendant was not liable at all. We have power to order final judgment for the party prevailing on appeal, or simply to reverse; and when the latter judgment is ordered, we do not and cannot determine whether the defendant has lost his costs by reason of the error.

Without, therefore, passing upon the other question, the order must be affirmed; but, as the question was not free from doubt, and the cases referred to seemed to justify the appeal, no costs of the motion or of this appeal should be awarded.

Order affirmed.

---

### ROBERT H. BELDEN *v.* ALBERT H. NICOLAY.

It is settled, that where a vendor refuses to deliver personal property sold, the rule of damages—the vendee not having paid the price—is the difference between the market value on the day fixed for the delivery, and the sum to be paid by the purchaser according to the contract.

The plaintiff, in an action for such refusal, must prove such market value on the day for the delivery, and to that end it is not competent for him, on the examination of his own witnesses, to prove the price at which *sales* were made *after* that day, to be viewed in connection with other evidence, so as to form an average of the whole testimony, upon which the finding as to the market value is based.

Where improper testimony is received in the court below, which not only *may* have influenced the judgment, but which the return in terms states was taken into consideration in finding the facts, this court, on appeal, cannot disregard the error, although there appears to be evidence in the cause which would have been sufficient to sustain the same finding, had the illegal testimony been rejected.

UPON the hearing of this appeal, which was brought to review a judgment of the Marine Court, the parties agreed substantially upon the following statement of facts, so far as the same extends, made by the defendant's counsel :

" The defendant, Nicolay, was an auctioneer, dealing principally in stocks and bonds.

" On the sixth day of April, 1854, he held a sale at the Merchants' Exchange, of securities, which had been previously advertised in all the newspapers, and among other things on the catalogue appeared 500 shares ' Ship Timber Bending Company stock.'

" It may be inferred, from the evidence, that the company had issued two descriptions of stock certificates—one representing ' full paid' stock, and the other representing ' scrip' stock, or stock subscribed, but only partially paid in to the company.

" The ' scrip' stock alone had been previously publicly sold, and there had been no public sales of ' full paid' stock until the said sixth of April.

" The plaintiff attended the sale, and when there, the defendant was asked whether it was ' scrip' stock, or ' full paid' stock, when he distinctly answered, it was ' full paid' stock.

" The whole 500 shares were sold in four lots, one of 200 shares, and the others of 100 shares each. It was all sold at $1 15 a share.

" The plaintiff bought 100 shares at that price. By the terms of sale, ten per cent. was to be paid on that day, and the balance on the next day, when the stock was to be delivered.

" The plaintiff made the tender of the money, and brought suit for damages, for a failure to deliver the stock.

" The justice below gave judgment for the plaintiff for $185 and costs."

It was alleged by the defendant, that his clerk misled him, in not stating in the catalogue, that the stock was scrip stock.

That such, in fact, was the stock which had been left with him for sale, and that he was unable to deliver full paid stock.

The defendant appealed from the judgment, upon the ground of error in the measure of damages allowed by the court below, and in the admission of evidence as to the value of the stock. A witness for the plaintiff testified, that he, the witness, had paid for the same stock $3 50 per share "since the sale to the defendant," and that he considered the value of the full paid stock $5 per share. Another witness for the plaintiff stated that he had bought and sold full stock as a broker since the sale in question; had bought one lot of scrip stock for $1 25 a share, upon which $2 50 more remained to be paid, and had paid for a lot of the full stock $3 50 per share, in cash. He also testified, that the market value varied—"$3 50 is the lowest, and from that to $5 is the value. I am conversant with the stock." Other similar testimony was given in the plaintiff's behalf, some of the witnesses, however, mentioning $2 and $2 75 as the value per share. The defendant objected to all the evidence of the plaintiff on the subject of value. His counsel insisted that the plaintiff should be restricted to proving the market value on the day fixed for the delivery, and this only by showing sales at that time. And he contended, that as the only sale proved to have taken place at about the period in question was to the plaintiff himself, no damages could be awarded.

The justice overruled the objections, and certified, in his return, that "from all the evidence, $3 per share was, in his opinion, the value of the stock on the 7th of April."

*James Thomson*, for the defendant.

*James Humphrey*, for the plaintiff.

BY THE COURT. WOODRUFF, J.—The rule of damages in an action on a contract of sale, when the vendor neglects or refuses to deliver the personal property sold, and when nothing was paid by the purchaser, is the difference between the con-

tract price and the market value of the property on the day the property should have been delivered.

The plaintiff's proof of the value of the stock now in question ought, therefore, to have been confined to the 7th of May, when the stock was to be delivered. Upon proof that no sales were made on that day, to the knowledge of the witnesses, their opinions of the value would not necessarily be excluded if they were acquainted with the subject generally, although it appeared, on cross-examination, that their knowledge of actual sales related to a period shortly before or after the day in question. (*Dana* v. *Fiedler*, 1 E. D. Smith, 463.)

But a plaintiff, on direct examination, is not at liberty to prove sales after the time of delivery as a ground for an inference by the court or jury, that the value of the property was the sum at which such sales were made.

There was evidence in the cause upon which (had that alone been received for consideration) the finding of the court below might, we think, have been supported, as not being without evidence; but when illegal evidence is, in fact, received, and the return states, in terms, that the finding of the court below is upon a consideration of all the evidence given upon the subject, we are not at liberty to disregard the error. In such case, it not only appears that the improper testimony may have influenced the court in its finding upon the facts, but that it did so.

The judgment must be reversed, with costs.

Judgment reversed.